**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:05-CV-423-MR-DCK**

| | |
|---|---|
| FOREST2MARKET, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **MEMORANDUM AND** |
| ) | **RECOMMENDATION** |
| AMERICAN FOREST MANAGEMENT, ) | |
| INC., FOREST RESOURCE ) | |
| CONSULTANTS, INC., F&W FORESTRY ) | |
| SERVICES, INC., and PETERS FOREST ) | |
| RESOURCES, INC. ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Defendants' Motion To Dismiss" (Document No. 22) and "Memorandum Of Law In Support..." (Document No. 23), filed November 7, 2005; Plaintiff's "Memorandum In Opposition To Defendants' Motion To Dismiss" (Document No. 26), filed November 28, 2005; and the "Reply In Support Of Defendants' Motion To Dismiss" (Document No. 28), filed December 12, 2005. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b), and is now ripe for disposition.

Having carefully considered the papers, the record, applicable authority and the arguments of counsel at a Motions Hearing on February 20, 2007, the undersigned will respectfully recommend that the motion to dismiss be <u>denied</u>.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Forest2Market, Inc. ("Plaintiff") describes itself as a "unique provider of internet based solutions to the forest and wood products industries." (Document No. 20 at 2). Plaintiff developed an internet website providing an interactive service to assist companies in buying and/or selling

timber. The website became operational around July 2000. Apparently, the service provided by Plaintiff on its website allowed participants to get current pricing information in 39 distinct geographic regions. Plaintiff categorized and analyzed timber sales based on 17 different factors, many of which it claims it conceived and developed and had been exclusively its own until the alleged wrongful action of Defendants. At least in part, however, the services provided by Plaintiff's website have relied on sales data provided by the Defendants.

Participants on the website were required to pay a fee for the website's services, as well as a membership fee to gain access. In addition, participants had to review and agree to a License Agreement prior to gaining access to the website. According to Plaintiff, F&W Forestry Services entered into the website contractual agreement on October 24, 2000; American Forest Management, Inc. entered into the agreement on October 3, 2001; Peters Forest Resources, Inc. entered into the agreement on October 18, 2002; and Forest Resource Consultants entered into the contractual agreement on August 9, 2000 and amended that relationship on September 27, 2004 (these parties are collectively referred to as "Defendants").

In early 2005, Plaintiff discovered that Defendants had purchased the website TimberMarketReport.com and contend that that website, which had previously been non-interactive, had become identical in look, feel, use, formation and services to Plaintiff's website. On September 5, 2005, Plaintiff filed a "Verified Complaint" in Mecklenburg County Superior Court alleging claims for breach of contract, misappropriation of trade secrets, unfair and deceptive trade practices, and unjust enrichment. Defendants filed their notice of removal (Document No. 1) on October 5, 2005. Plaintiff filed its "Amended Verified Complaint" (Document No. 20) on October 27, 2005.

Plaintiff's Complaint asserts causes of action under breach of contract, trade secrets, unfair

trade practice and unjust enrichment. These claims primarily allege that Defendants breached the terms and conditions they had accepted as participants on the Forest2Market.com website. Specifically, they contend that Defendants "copied, adapted, published, retransmitted, redistributed, sold and used and transferred the services and information of Forest2Market.com for their own benefit and revenue in violation of the terms and conditions of the agreement the Defendants had with Forest2Market." (Document No. 20 at 6).

Plaintiff's Complaint also alleges that Defendants accessed, acquired, redistributed and disclosed trade secret information, including selling such information and services, to customers in the timber industry, including Plaintiff's customers, without Plaintiff's approval. Plaintiff argues that Defendants' actions created a method of unfair competition in violation of North Carolina General Statutes ("N.C.G.S.") § 75-1.1 that caused Plaintiff harm. Finally, if the Court declines to find an enforceable contract, the "Plaintiff prays in the alternative for relief of economic loss and damage due to the unjust enrichment of the Defendants by their use, dissemination, distribution of the services and information provided by Forest2Market.com to the Defendants during their time as participants in the Forest2Market.com website." (Document No. 20 at 8-9).

On November 7, 2005, Defendants filed their "... Motion To Dismiss" which is currently pending before the Court.

## II. STANDARD OF REVIEW

A motion to dismiss tests the "legal sufficiency of the complaint" but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992); Eastern Shore Markets, Inc v. J.D. Assoc. Ltd. Partnership, 213 F.3d 175, 180 (4th Cir. 2000). As recently explained by the Supreme Court:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, ... [f]actual allegations must be enough to raise a right to relief above the speculative level....

Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1964-65 (2007) (citations omitted). The Court went on to hold that "[o]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." Id. at 1969. The Supreme Court also added in another recent decision that

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" In addition, when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint.

Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007) (citations omitted).

"Although for the purposes of this motion to dismiss we must take all the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The court "should view the complaint in the light most favorable to the plaintiff." Mylan Labs, Inc. v. Matkar, 7 F.3d 1130, 1134 (4th Cir. 1993).

### III. DISCUSSION

Plaintiff filed its "Verified Complaint" in state court alleging violations of state law. Defendant removed to this Court on the basis of diversity jurisdiction pursuant to 28 U.S.C. § 1332 and the argument that Plaintiff's claims implicated federal copyright law. Defendant asserts that Plaintiff's claims are preempted by the Copyright Act, specifically 17 U.S.C. § 301, and that even

4

if Plaintiff "had properly couched its Amended Complaint in terms of copyright infringement" that the case should be dismissed because Plaintiff lacks standing to maintain an infringement action in federal court because it has not registered a copyright claim pursuant to 17 U.S.C. § 411(a).

Plaintiff has never stated a claim for copyright infringement or acknowledged that the "services and information" its website provides are copyrightable. Although this action shares similarities with a copyright infringement claim, it is the undersigned's view that it is not, and that copyright preemption should not apply.

Deferring for the moment the question of preemption, the undersigned finds that removal in this case was proper, at a minimum, based on diversity jurisdiction. "[A] a defendant may remove a case to federal court if the parties are diverse and meet the statutory requirements for diversity jurisdiction." Lontz v. Tharp, 413 F.3d 435, 439 (4th Cir. 2005). "Since diversity always vests original jurisdiction in the district courts, diversity also generates removal jurisdiction. Id. In the instant case, the Defendants are citizens of South Carolina, Georgia, and Louisiana, while the Plaintiff is a citizen of North Carolina. Pursuant to 28 U.S.C. § 1332(a)(1), district courts have original jurisdiction of controversies between citizens of different states. See also 28 U.S.C. § 1441(b). Jurisdiction in this Court therefore is proper regardless of whether this matter is cast as a copyright action or under Plaintiff's state law claims. Plaintiff does not appear to contest removal based on diversity and has not filed a motion to remand.

Defendants' notice of removal, citing 28 U.S.C. § 1338(a), states that U.S. District Courts have "original and exclusive jurisdiction over any civil action relating to copyrights." (Document No. 1 at ¶ 10). "The jurisdictional doctrine of complete preemption ... provide[s] a basis for federal jurisdiction: where 'Congress so completely preempts a particular area that any civil complaint

5

raising this select group of claims is necessarily federal in character.'" Sonoco Prods. Co. v. Physicians Health Plan, Inc., 338 F.3d 366, 371 (2003) (citations omitted). Complete preemption "refers to that 'small category of statutes that ...'authoriz[e] removal of actions that sought relief only under state law.'" Lontz v. Tharp, 413 F.3d, 435, 437 (4th Cir. 2005) (citing Alongi v. Ford Motor Co., 386 F.3d 716, 724 (6th Cir. 2004) (quoting Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6-7 (2003)). "Recognizing that complete preemption undermines the plaintiff's traditional ability to plead under the law of his choosing, the Supreme Court has made clear that it is 'reluctant' to find complete preemption." Id. at 441 (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987). Defendants contend that because Plaintiff's claims are "unquestionably preempted by Section 301 of the Copyright Act," they must be dismissed. (Document No. 23 at 2).

Under the Copyright Act, 17 U.S.C. § 301(a), Congress has specifically preempted all legal or equitable rights that are equivalent to those protected by federal copyright law. "A right which is 'equivalent to copyright' is one which is infringed by the mere act of reproduction, performance, distribution or display." Collezione v. Hillsdale, 243 F.Supp.2d 444, 449 (M.D.N.C. 2003) (quoting 1 M. Nimmer, *The Law of Copyright* § 1.01[B][3]). For a state cause of action to survive preemption, it must include an "**extra element**" in addition to, or instead of, the exclusive rights under the Copyright Act. Old South Home Co. v. Keystone Realty Group, Inc., 233 F.Supp.2d 734, 736 (M.D.N.C. 2002) (emphasis added). The "extra element" must change the nature of the action so that it is qualitatively different from a copyright infringement claim. Rosciszewski v. Arete Associates, 1 F.3d 225, 230 (4th Cir. 1993) (citation omitted). "If the purportedly extra element is not qualitatively different, the state law action is preempted." Collezione, 243 F.Supp.2d at 449.

Section 301 sets forth three conditions to be satisfied for preemption of a right under state

law: (1) the cause of action must not have arisen before January 1, 1978, (2) the right asserted must be equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106, and (3) the right asserted must come within the subject matter of copyright as defined by sections 102 and 103. See 17 U.S.C. § 301(a); see also, Collezione, 243 F.Supp.2d at 449; Alcatel USA, Inc. v. DGI Techs., Inc., 166 F.3d 772, 785-86 (5th Cir. 1999); and Rosciszewski v. Arete Assoc., Inc., 1 F.3d 225, 229 (4th Cir. 1993). The first condition is easily met since this action was filed in 2005. The second and third conditions require application of the elements of Plaintiff's state claims to 17 U.S.C. §§ 106, 102 and 103.

### A. Exclusive rights in copyrighted works.

To determine whether the right asserted is equivalent to the rights specified in §106, one must compare the asserted right(s) to the exclusive rights of an owner of copyright:

> (1) to **reproduce the copyrighted work** in copies or phonorecords;
>
> (2) to **prepare derivative works** based upon the copyrighted work;
>
> (3) to **distribute copies** or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending;
>
> (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to **perform the copyrighted work publicly**;
>
> (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to **display the copyrighted work publicly**; and
>
> (6) in the case of sound recordings, to **perform the copyrighted work publicly** by means of a digital audio transmission.

17 U.S.C. § 106 (emphasis added).

Defendants argue that "each purported cause of action listed in the Amended Complaint implicates a right that is the equivalent of one of these exclusive rights of a copyright owner." (Document No. 23 at 6). However, all of the exclusive rights identified above apply to copyrighted work, and it is undisputed that Plaintiff has neither applied for nor received, a copyright protecting the services or information provided by the Forest2Market.com website. Furthermore, Defendants never explain which, or how, Plaintiff's claims are *equivalent* to any of the rights listed above.

> In order to ascertain whether a specific state cause of action involves a right equivalent to one of those identified in § 106, reference must be made to the elements of the state cause of action. State-law claims that infringe one of the exclusive rights contained in § 106 are preempted by § 301(a) if the right defined by state law "'may be abridged by an act which, in and of itself, would infringe one of the exclusive rights.'" However, "if an 'extra element' is 'required instead of or in addition to the acts of reproduction, performance, distribution or display, in order to constitute a state-created cause of action, . . . there is no preemption,'" provided that "the 'extra element' changes the 'nature of the action so that it is qualitatively different from a copyright infringement claim.

Rosciszewski, 1 F.3d at 229-30 (internal citations omitted).

**1. Breach of Contract**.

Plaintiff's first state law cause of action is breach of contract. "The elements of a claim for breach of contract are (1) the existence of a valid contract and (2) breach of the terms of that contract." Bob Timberlake Collection, Inc. v. Edwards, 176 N.C.App. 33, 43, 626 S.E.2d 315, 323 (2006). Plaintiff alleges the terms of the contract, or license agreement,[1] have been violated by the Defendants: (1) "reformatting, printing and displaying the services and information provided ...

---

[1] "[W]e treat the licenses as ordinary contracts ... [w]hether there are legal differences between 'contracts' and 'licenses' ... is a subject for another day." ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1450 (7th Cir. 1996).

under the guise of their participation in the Forest2Market.com website" (2) copying adapting, publishing, retransmitting, redistributing, selling and using and transferring the services and information of Forest2Market.com for their own benefit and revenue in violation of the terms and conditions of the agreement, and (3) by creating derivative work based on the Forest2Market.com website. (Document No. 20 at 6). Plaintiff contends that the "mere fact that some of Defendants' wrongful activity (i.e. copying and republishing) could also be a copyright violation (assuming the activity was taken with respect to copyrightable material) does not preempt a claim for breach of the License Agreement." (Document No. 26 at 9).

The pertinent question is whether there was activity beyond the general scope of copyright; "when a state law violation is predicated upon an act incorporating elements beyond mere reproduction or the like, the rights involved are not equivalent and preemption will not occur." Trandes, 996 F.2d at 659 (quoting Harper & Row Publishers, Inc. v. Nation Enterprises, 723 F.2d 195, 200 (2nd Cir. 1983), rev'd on other grounds, 471 U.S. 539 (1985). Plaintiff argues that the "extra element" that makes their action qualitatively different from a copyright infringement claim is the contract itself, - "the existence of a valid contract is an extra element that makes the claim qualitatively different from a copyright infringement claim." (Document No. 26 at 7).

According to Plaintiff, the only Fourth Circuit case squarely addressing this issue is Acorn Structures, Inc. v. Swantz, 846 F.2d 923 (4th Cir. 1988). In Acorn, the Fourth Circuit held that the district court erred in its judgment that the plaintiff's breach of contract claim was preempted by Section 301; "[p]laintiff's claim for breach of contract entails a distinct cause of action which is clearly not within the subject matter of copyright but arises out of the implicit contractual provisions of the design agreement." Acorn, 846 F.2d at 926. In Acorn, the Fourth Circuit decided that the

9

breach of contract claim was not preempted and therefore reversed and remanded to the district court for disposition of the breach of contract claim, even though the underlying drawings in the dispute were copyrighted. Id. at 925. As in this case, subject matter jurisdiction in Acorn rested on diversity of citizenship.

Plaintiff has cited several other cases that rely on the existence of a License Agreement as an "extra element" including: ProCD, Inc. v. Zeidenberg, 86 F.3d 1447, 1454-55 (7th Cir. 1996) ("A copyright is a right against the world. Contracts, by contrast, generally affect only their parties; strangers may do as they please, so contracts do not create 'exclusive rights.' ... whether a particular license is generous or restrictive, a simple two-party contract is not 'equivalent to any of the exclusive rights within the general scope of copyright' and therefore may be enforced); Bowers v. Baystate Techs., 320 F.3d 1317, 1325 (Fed.Cir. 2003) ("This court believes that the First Circuit would follow the reasoning of ProCD and the majority of other courts to consider this issue. This court, therefore, holds that the Copyright Act does not preempt [] contract claims."); Frontline Test Equip. v. Greenleaf Software, 10 F.Supp.2d 583, 593 (W.D.Va. 1998) ("...rights of the plaintiff in the instant action are not equivalent to those provided by the federal copyright laws. ... the contract gave the plaintiff additional rights. Therefore, the breach of contract claim is not preempted by the Federal Copyright Act and the motion to dismiss the breach of contract claim must be denied."); Lipscher v. LRP Publs., Inc., 266 F.3d 1305, 1318 (11th Cir. 2001) ("claims involving two-party contracts are not preempted because contracts do not create exclusive rights, but rather affect only their parties" however, "[i]f the promise amounts only to a promise to refrain from reproducing, performing, distributing or displaying the work, then the contract claim is preempted).

Based on these cases, Plaintiff surmises that Defendants' "use of Forest2Markets' services

and information for their own benefit and revenue, in violation of the License Agreement, is an added element that is not part of a copyright infringement claim." (Document No. 26 at 9).

The undersigned finds the issue of whether the rights asserted in Plaintiff's action for breach of contract are equivalent to the exclusive rights in copyright to be a close question. Although most of the claims Plaintiff asserts sound of copyright as far as the alleged wrongful reproduction, the undersigned finds that there is an "extra element" to this case in the alleged willful breach of contract. Viewing the facts in a light most favorable to the non-movant and considering the traditionally high standard for allowing a motion to dismiss, the undersigned is convinced dismissal of this claim would be premature.

### 2. Trade Secrets.

The next state law cause of action asserted is a claim for misappropriation of trade secrets. Plaintiff's Complaint alleges that by agreeing to the terms and conditions of their website's license agreement the Defendants agreed to protect their proprietary rights, including services and information. Plaintiff contends that agreement was breached by Defendants' disclosure of information that led to the creation of the TimberMarketReport.com. "A trade secret is defined as 'business or technical information' that both '[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable' and '[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" Eli Research, Inc. v. United Communications Group, LLC, 312 F.Supp.2d 748, 756 (M.D.N.C. 2004) (citing N.C.G.S. § 66-152(3)). The "essence of misappropriation ... is defined as 'acquisition, disclosure, or use of a trade secret of another ... unless such trade secret was arrived at by independent development, reverse engineering, or was obtained from another person with a right to disclose the trade secret.'" In re

Wilson, 248 B.R. 745, 750 (M.D.N.C. 2000) (citing N.C.G.S. § 66-152(1)). Section 66-155 of the North Carolina Trade Secrets Protection Act establishes the burden of proof for a claim of misappropriation of a trade secret:

> Misappropriation of a trade secret is prima facie established by the introduction of substantial evidence that the person against whom relief is sought both:
>
> > (1) Knows or should have known of the trade secret; and
> >
> > (2) Has had a specific opportunity to acquire it for disclosure or use or has acquired, disclosed, or used it without the express or implied consent or authority of the owner.
>
> This prima facie evidence is rebutted by the introduction of substantial evidence that the person against whom relief is sought acquired the information comprising the trade secret by independent development, reverse engineering, or it was obtained from another person with a right to disclose the trade secret. This section shall not be construed to deprive the person against whom relief is sought of any other defenses provided under the law.

N.C.G.S. § 66-155.

The analysis in Trandes v. Guy F. Atkinson Co., 996 F.2d 655 (4th Cir. 1993), on this issue is applicable to the instant case:

> The essential element of a misappropriation claim is the "abuse of confidence or impropriety in the means of procurement." ... The significant difference of fact between trade secrets and processes or devices which are not secret is that knowledge of the latter is available to the copier without the use of improper means to procure it, while knowledge of the former is ordinarily available to him only by the use of such means. It is the *employment of improper means to procure the trade secret, rather than the mere copying or use*, which is the basis of [liability].... Apart from breach of contract, abuse of confidence or impropriety in the means of procurement, trade secrets may be copied as freely as devices or processes which are not secret. We agree with the Second Circuit that the breach of a duty of trust or confidentiality comprises the core of actions for trade secret misappropriation, and "supplies the 'extra element' that qualitatively

> distinguishes such trade secret causes of action from claims for copyright infringement that are based solely upon copying." Because Trandes's claim for trade secret misappropriation requires proof of a breach of trust or confidence, § 301 does not preempt the claim.

Trandes, 996 F.2d at 660 (citations omitted).

Based on the holding by the Fourth Circuit in Trandes, and the previous reasoning on the breach of contract claim, the undersigned finds that Plaintiff's trade secret claim contains an extra element that qualitatively distinguishes this claim from a copyright infringement action and therefore should not be dismissed at this time under a theory of Copyright Act preemption.

### 3. **Unfair and Deceptive Trade Practices**.

Next, Plaintiff asserts a cause of action under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C.G.S.. § 75-1.1 *et seq*. "To prevail on such a claim, a plaintiff must prove (1) that defendant committed unfair or deceptive acts, (2) that defendant's action was in or affecting commerce, and (3) that the act proximately caused injury to the plaintiff." Eli Research, Inc., 312 F.Supp. 2d at 757 (citing Dalton v. Camp, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). A wrongful action pursuant to the UDTPA includes unfair or deceptive acts that may or may not be qualitatively different from a wrongful action under the Copyright Act. "Plaintiff must allege more than just unfair trade practice by copying or reproducing in order to avoid preemption. ... [t]o meet this requirement, a complaint must present some claim of misrepresentation, deception, confidential relationship, or palming off." Innovative Medical Products, Inc. v. Felmet, 472 F.Supp.2d 678, 683 (M.D.N.C. 2006) (citations omitted).

Plaintiff alleges in the instant case that Defendants acted under the guise of participants in the Forest2Market.com website and therefore took the information in an unethical manner that violated the license agreement as well as the UDTPA. Plaintiff acknowledges that the Fourth Circuit

13

has not directly addressed whether a North Carolina UDTPA action is preempted by the Copyright Act, and notes a split in the North Carolina district courts.

In Old South Home Company v. Keystone Realty Group, Inc., 233 F.Supp.2d 734 (M.D.N.C. 2002) the plaintiff alleged copyright infringement under the Copyright Act *and* unfair and deceptive trade practices in violation of North Carolina's UDTPA. That court found that

> While these elements may indeed be extra elements in that they must be proved to establish an unfair trade practices claim under the NCUTPA, they do not per se make the unfair trade practices claim qualitatively different from a copyright infringement claim. "Examples of extra elements in unfair competition claims that [do] avoid preemption include: breach of fiduciary duty, breach of a confidential relationship, and palming off the defendant's products as those of the plaintiff's."

Id. at 737 (citations omitted). In Old South, the court noted that the plaintiffs alleged the defendants infringed their copyrights to unfairly compete, but did not specifically allege "any unethical conduct other than that implicit in any willful copyright infringement claim." Id.

In the instant case, however, Plaintiff does not assert a copyright claim, but does assert a claim that Defendants engaged in unethical conduct. Plaintiff argues, and the undersigned agrees, that these factors make Old South distinguishable from the instant case. Old South pointed out that cases involving a breach of a confidential relationship or an affirmative act of misrepresentation would qualitatively change the nature of an unfair trade practice claim. Id. at 738.

Another pertinent case cited by Defendants and distinguished by Plaintiff is Collezione Europa U.S.A., Inc. v. Hillsdale House, Ltd., 243 F.Supp.2d 444 (M.D.N.C. 2003). In that case the district court granted summary judgment on the defendants' copyright claim but dismissed claims for deceptive practices and unjust enrichment. The court in Collezione determined that preemption applied because "Hillsdale has alleged no fraud; no relationship existed between the parties prior

to the acts constituting the alleged infringement ... [t]he copyright violation remains the gravamen of the claim." Collezione, 243 F.Supp.2d at 450. Therefore the court held there was not a "qualitatively additional element which is separate and distinct from the alleged copying." Id. As in Old South, Collezione did not include allegations of a prior confidential contractual relationship, but did include a copyright claim - unlike the instant case.

The Collezione opinion cites another case that Plaintiff contends is more analogous to its unfair and deceptive trade practice claim in the instant matter, Baldine v. Furniture Comfort Corp., 956 F.Supp. 580 (M.D.N.C. 1996). In Baldine, the plaintiff brought claims for breach of contract, copyright infringement and unfair and deceptive trade practices. The plaintiff alleged that the defendant had acquired her design model under false pretense and then created derivative works. On the question of whether the unfair and deceptive trade practice claim was preempted by the Copyright Act the court held:

> False representations made ... for the purpose of obtaining Baldine's design with intent to use it without paying for it would constitute a viable claim under 75-1.1 since the fraud and not the actual copyright violation would be the gravamen of the claim. Although a mere breach of contract does not constitute a violation of 75-1.1, a breach accompanied with aggravating circumstances -- such as an intentional misrepresentation made for the purpose of deceiving another and which has the natural tendency to injure another -- can violate the statute.

Baldine, 956 F.Supp. at 587 (citations omitted). Plaintiff's position is that the instant case is more like Baldine in that Defendants' alleged breach of a license agreement is akin to false representation or breach of a confidential relationship and thus adds an element to the claim beyond a typical copyright infringement claim.

Viewing the facts in a light most favorable to Plaintiff, it appears to the undersigned that

15

Plaintiff has sufficiently stated a claim for unfair and deceptive trade practices that should not be dismissed at this stage of the litigation for a failure to state a claim upon relief cannot be granted.

   **4. Unjust Enrichment**.

Plaintiff's final claim for unjust enrichment is presented as an alternative claim. Plaintiff argues that Fed.R.Civ.P. 8(e)(2) specifically allows a party to assert a claim alternatively or hypothetically. Plaintiff "concedes that if the contract between Plaintiff and Defendants is valid and enforceable, then it has no unjust enrichment claim." (Document No. 26 at 14). Considering that the undersigned will not recommend dismissal of the claim for breach of contract, the alternative claim for unjust enrichment should also be allowed to stand until the Court determines whether a valid and enforceable contract exists. Furthermore, Plaintiff presents a reasonable argument that an unjust enrichment claim would not be preempted by the Copyright Act, on grounds similar to those explained above, that an extra element exists in the claim that makes it qualitatively different than copyright infringement.

The determination of a likelihood that extra elements exist in Plaintiff's claims is sufficient grounds to deny Defendants' motion to dismiss. The above discussion, however, begs the next question of whether the right asserted comes within the subject matter of copyright as defined by sections 102 and 103. The undersigned will briefly address this final condition of 17 U.S.C. § 301.

**B. Subject matter of copyright**.

17 U.S.C. § 102 provides:

> (a) Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include the following categories:

> (1) literary works;
>
> (2) musical works, including any accompanying words;
>
> (3) dramatic works, including any accompanying music;
>
> (4) pantomimes and choreographic works;
>
> (5) pictorial, graphic, and sculptural works;
>
> (6) motion pictures and other audiovisual works;
>
> (7) sound recordings; and
>
> (8) architectural works.
>
> (b) In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

Plaintiff argues that there is "no basis to conclude that Forest2Market's systems and information is the 'subject matter of copyright'" because there are no allegations in the Complaint of copyright infringement, nor are there allegations that "any 'original works of authorship' have been copied." (Document No. 26 at 5). Plaintiff emphasizes that its website provided "services and information" that are not copyrightable.

Based on the Complaint and the pleadings thus far, it is difficult for the Court to determine whether the allegations could be regarded as relating to one of the above categories of authorship. Section 102(a)(1) "literary works" seems to be the only reasonable possibility. Defendants contend that computer software has been found to be copyrightable as a "literary work" by some courts; however, the Complaint does not allege copying or reproduction of computer software. Furthermore, it is difficult to construe the website as an "original work of authorship" since it appears undisputed

17

that it, at least in part, relied on and distributed timber industry facts and information provided by the Defendants themselves.

Defendants contend that "the Fourth Circuit previously considered and rejected, a nearly identical argument" to Plaintiff's in U.S. ex rel. Berge v. Board of Trustees of the University of Alabama, 104 F.3d 1453. (Document No. 28 at 3). Pamela Berge was a doctoral candidate who brought suit against the University of Alabama for unauthorized use of her dissertation. Berge argued that her conversion claim could not be preempted by the Copyright Act because her "ideas and methods" were not copyrightable. (Document No. 28 at 4). The Fourth Circuit found that "[t]here can be no doubt that Berge's work - her dissertation, to which she herself affixed a copyright mark; her abstracts; her drafts, etc.- falls within the scope of the subject-matter of copyright ... [a]ll of these written works are clearly "original works of authorship fixed in a[ ] tangible medium of expression." Berge, 104 F.3d at 1463.

The undersigned agrees that Berge overreached in trying to avoid preemption. As the Fourth Circuit determined, her work was clearly an "original work of authorship" and fits under § 106 as a copyrightable literary work. Berge's written dissertation however, is distinguishable from the Plaintiff's claims in this case involving an interactive website providing services and information. It is far less clear whether the Plaintiff's website and the alleged wrongdoing of the Defendants can fit as neatly under the Copyright Act.

Like Berge, Plaintiff also argues that the scope of copyright does not extend to facts and ideas. Certainly section 102(b) clearly excludes copyright protection to ideas, as well as, processes, systems, methods of operation and concepts. Defendants would have the Court determine that Plaintiff's arguments are merely "artful pleading" and that what is really at issue are allegations of

copying of a computer software program that should be labeled copyright infringement. The undersigned is not inclined to adopt that position at this stage of the litigation. Further discovery and the briefing of future dispositive motions should shed more light on whether the alleged wrongful action involves an original work of authorship as Defendants contend, or whether it is more like uncopyrightable services, information, facts, and/or ideas as Plaintiff contends.

As stated above, the Court does not resolve conflicts surrounding the facts, or the merits of the claims, or the applicability of defenses on a motion to dismiss. See Republican Party v. Martin, 980 F.2d at 952. It is enough to survive a motion to dismiss that Plaintiff has given fair notice of what its claim is, the grounds on which those claims rest, and a set of facts consistent with the allegations. See Bell Atlantic v. Twombly, 127 S.Ct. at 1964-65. The undersigned is not convinced that the Plaintiff has failed to state claims upon which relief may be granted.

## IV. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that "Defendants' Motion To Dismiss" (Document No. 22) be **DENIED**.

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. § 636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this memorandum must be filed within ten (10) days after service of same. Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989); United States v. Rice, 741 F. Supp. 101, 102 (W.D. N.C. 1990). Failure to file objections to this Memorandum with the district court constitutes a waiver of the right to de novo review by the district court, Snyder, 889 F.2d at 1365, and may preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d

841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Martin K. Reidinger.

**SO ORDERED AND RECOMMENDED**.

Signed: October 9, 2007

David C. Keesler
United States Magistrate Judge